IN THE
UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____
                                           )
SSM LITIGATION GROUP,                      )
                                           )
                    Petitioner             )
                                           )
         v.                                )     No. 23-1267
                                           )
ENVIRONMENTAL PROTECTION AGENCY,           )
                                           )
                    Respondent             )
_____)

**PETITIONER'S MOTION TO HOLD CASE IN ABEYANCE**

Petitioner SSM Litigation Group respectfully requests that the Court hold this case in abeyance, pending resolution by the Court of a case, already argued and submitted, which addresses procedural and substantive issues that also will be raised in the instance case. Doing so would conserve the resources of the Court and the parties and would not significantly prejudice Respondent EPA. Petitioner has contacted counsel for Respondent, who has indicated that EPA takes no position on this motion at this time and will decide whether to file an opposition after reviewing Petitioner's motion for abeyance.

1.   SSM Litigation Group has petitioned for review of the promulgation

1

by the U.S. Environmental Protection Agency ("EPA") of the final action entitled *Removal of Title V Emergency Affirmative Defense Provisions From State Operating Permit Programs and Federal Operating Permit Program*, published on July 21, 2023 at 88 Fed. Reg. 47,029 (the "Affirmative Defense Removal Rule").

2. Under Title V of the Clean Air Act, 42 U.S.C. Chapter 85 Subchapter V, many types of stationary sources of air pollution are required to have an operating permit, issued by a delegated state or, in some cases, by EPA ("Title V permits"). Since the time EPA first issued regulations specifying the contents and procedures for state Title V permits, over 30 years ago, those regulations allowed state permits to include a provision declaring that the source operator has an affirmative defense to civil penalties for exceedances of permit limitations resulting from emergencies. 40 C.F.R. § 70.6(g); *see* 81 Fed. Reg. 38,645, 38,647 (June 14, 2016). A few years later, when it promulgated regulations for federally-issued Title V permits, EPA included a virtually identical affirmative defense. 40 C.F.R. § 71.6(g) (together with the provision for state permit programs, the "affirmative defense provisions"); *see* 81 Fed. Reg. at 38,647. The affirmative defense provisions state that a source will not be subject to civil penalties for an exceedance of a technology-based emission

2

limitation arising from an "emergency," defined as "any situation arising from sudden and reasonably unforeseeable events beyond the control of the source, including acts of God, which situation requires immediate corrective action to restore normal operation, and that causes the source to exceed a technology-based emission limitation under the permit, due to unavoidable increases in emissions attributable to the emergency." 40 C.F.R. §§ 70.6(g)(1) and 71.6(g)(1).  The source operator must show that the exceedance was not "caused by improperly designed equipment, lack of preventative maintenance, careless or improper operation, or operator error." *Id*.

3. The Affirmative Defense Removal Rule that SSM Litigation Group is challenging in this petition for review removed the affirmative defense provisions from EPA regulations on state and federal Title V permit programs, directed states to revise their state regulations if they included an affirmative defense provision, and declared that existing permits that contain affirmative defense language must be modified promptly. 88 Fed. Reg. 47,029, 47,030-31 (July 12, 2023).  EPA offered two primary reasons for eliminating affirmative defense provisions from Title V permitting regulations and from individual permits.  First, EPA concluded that allowing an affirmative defense for exceedances associated with emergencies was inconsistent with the Court's

3

reasoning in a case arising under another provision of the Clean Air Act, *NRDC v. EPA*, 749 F.3d 1055 (D.C. Cir. 2014). *See, e.g.*, 88 Fed. Reg. at 47,037 (*NRDC* addresses "the legal basis for affirmative defense provisions," and based on "the reasoning of the *NRDC* decision, the EPA has determined that it is appropriate to remove the emergency affirmative defense provisions...because these provisions are not authorized by the CAA"). Second, EPA wanted the Title V program regulations to be consistent with actions EPA has been taking to eliminate similar affirmative defense provisions in other EPA regulations. 88 Fed. Reg. at 47,037; *see also* 81 Fed. Reg. at 38,649.

4. One of the other regulatory actions EPA wanted to be consistent with was EPA's reversal of its long-standing position that State Implementation Plans adopted by the states and approved by EPA, under Clean Air Act section 110, 42 U.S.C. § 7410, could include an affirmative defense for malfunctions. *See* 88 Fed. Reg. at 47,030 and n.3; 47,039 (maintaining the affirmative defense provisions in Title V permitting regulations "could effectively undermine…efforts of states to comply with the 2015" SSM SIP Call Rule); 87 Fed. Reg. 19,042, 19,044 and n.7(April 1, 2022); 81 Fed. Reg. at 38,649. EPA defined affirmative defenses for malfunctions in State Implementation Plans very similarly to the affirmative defense for emergencies in the Title V affirmative

4

defense provisions.  *Compare* 40 C.F.R. §§ 70.6(g) and 71.6(g) *with* 78 Fed. Reg. 12,460, 12,469-70 (Feb. 22, 2013) (describing EPA policy, since at least 1999, allowing State Implementation Plans to contain an affirmative defense for malfunctions, i.e. circumstances in which excess emissions are entirely beyond the control of the owner or operator…despite diligent efforts") and 80 Fed. Reg. 33,839, 33,924, 33,981 (June 12, 2015) (stating new EPA policy that affirmative defenses in State Implementation Plans are not allowed).

5. After defending inclusion of affirmative defenses for malfunctions in State Implementation Plans for years, including successfully defending EPA's approval of such a provision in the Texas State Implementation Plan, in *Luminant Generation Co. LLC v. EPA*, 741 F.3d 841 (2013), EPA changed its mind in 2015, based on this Court's reasoning in *NRDC v. EPA*.  *See* 80 Fed. Reg. 33,839, 33,924, 33,981-82 (June 12, 2015) (the "SSM SIP Call Rule"). Petitioner SSM Litigation Group, along with numerous other industry groups and 18 states, filed petitions for review of that action and other actions contained in the SSM SIP Call Rule. Those petitions for review were consolidated under lead case *Environmental Committee of the Florida Electric Power Coordinating Group, Inc. v. Environmental Protection Agency, et al.*, D.C. Cir. No. 15-1239 (the "SSM SIP Call Rule Case").  That case was submitted after oral argument

5

held March 25, 2022, but it is still awaiting decision.

  6. In briefing and oral argument of the SSM SIP Call Rule Case, SSM Litigation Group and the other petitioners in that case argued that *NRDC v. EPA* addresses a different scenario, where EPA is promulgating categorical nationwide emission standards for hazardous air pollutants, and the reasoning of that case does not support the elimination of affirmative defense provisions in State Implementation Plans. *See, e.g.*, pp. 28-29 of the Industry Reply Brief (ECF #1643581) in Case No. 15-1239. They argued that EPA instead should follow the Fifth Circuit's decision in *Luminant*, 741 F.3d 841, 853, which held that an affirmative defense for malfunctions in the Texas State Implementation Plan was not inconsistent with the Clean Air Act. *See, e.g.*, p. 29-30 of the Industry Reply Brief (ECF #1643581); *see also* 79 Fed. Reg. 55,920, 55,931 (Sept. 17, 2014) (EPA acknowledging that its "approval of affirmative defense provisions in SIPs or promulgation of such provisions in FIPs has been upheld by courts in several decisions"); *NRDC v. EPA*, 749 F.3d at 1064 n.2 (noting that the *NRDC* court's analysis of affirmative defense provisions in the context of EPA's hazardous air pollutant standard-setting authority did not necessarily apply to the different "question of whether an affirmative defense may be appropriate in a State Implementation Plan" and referencing *Luminant*, 741 F.3d

6

841). Petitioners in the SSM SIP Call Rule Case also argued that EPA's interpretation of the Clean Air Act as prohibiting an affirmative defense for malfunctions in State Implementation Plans is not entitled to any deference, because EPA was interpreting Congressional grants of authority, in Clean Air Act sections 113 and 304, 42 U.S.C. §§ 7413 and 7604, to the district courts, not authority granted to EPA. *See, e.g.*, p. 28 of the Industry Reply Brief (ECF #1643581) and p. 2 of the Supplemental Brief of Industry Petitioners (ECF #1929003).

7. Petitioners are asking that the instant case be held in abeyance pending the Court's disposition of the SSM SIP Call Rule Case, because there are several ways in which a decision in the latter case could be dispositive of the instant case, narrow the issues to be argued, or affect the parties' desires to proceed in the instant case. Courts have inherent power to hold a case in abeyance so as to manage their dockets with an eye towards economy of time and resources for the Court, counsel, and litigants. *See Landis v. North Am. Co.*, 299 U.S. 248, 254-55 (1936). This Court "[o]ften" issues abeyance orders "in light of other pending proceedings that may affect the outcome of the case before" it. *Basardh v. Gates*, 545 F.3d 1068, 1069 (D.C. Cir. 2008). Courts often stay proceedings "when a higher court is close to settling an important

issue of law bearing on the action," which "may be proper even where the issues in the independent proceeding are not necessarily controlling of the action before the court." *Wing Shing Products (BVI) Ltd. v. Simatelex Manufactory Co., Ltd.*, 2005 WL 912184, at *2 (S.D.N.Y. Apr. 18, 2005) (citations and internal quotation marks omitted).

    8.    It would be a waste of resources of the parties and the Court to move forward with briefing the instant case under the circumstances. For example, the panel in the SSM SIP Call Rule Case could determine that *NRDC v. EPA*'s reasoning applies only in situations where EPA is promulgating uniform emission standards for categories of sources, the stringency of which is specified by the Clean Air Act. Should the opinion in the SSM SIP Call Rule Case clarify the import of the Court's opinion in *NRDC v. EPA* and/or agree with the Fifth Circuit's holding in *Luminant*, 741 F.3d 841, 853, that an affirmative defense for malfunctions does not unlawfully impinge on District Courts' authority to determine appropriate penalties for various types of violations of the Clean Air Act, EPA at a minimum would need to reconsider the legal analysis that formed EPA's justification for the Affirmative Defense Removal Rule, which presumed that the reasoning in *NRDC v. EPA* also applies more broadly, to situations where, for example, a state imposes emission limitations through a Title V

operating permit. *Cf.* 87 Fed. Reg. at 19,044 (EPA's view that "the reasoning and logic of [*NRDC*] extend to regulations concerning operating permit programs under title V…aligns the EPA's position on affirmative defenses in title V with positions taken in other CAA program areas, including EPA policy relating to the treatment of startup, shutdown, and malfunction (SSM) periods in state implementation plans (SIPs).") EPA also would need to reconsider is conclusion that removing affirmative defense provisions from the Title V permitting regulations and from individual permits is appropriate to be consistent with other EPA actions that EPA described as eliminating unlawful affirmative defense provisions in other regulations, including in State Implementation Plans, if this Court finds in the SSM SIP Call Rule Case that EPA wrongly concluded that affirmative defense provisions in State Implementation Plans are unlawful.

9. Conversely, the Court could resolve the SSM SIP Call Rule case in a way that made it difficult for SSM Litigation Group to argue that EPA's removal of the affirmative defense provisions from the Title V permitting program was based on a faulty analysis of the Clean Air Act. And the Court's conclusion in the SSM SIP Call Rule case about whether the Court should give any deference to EPA's interpretation of the Clean Air Act as supporting EPA's prohibition of affirmative defense provisions in State Implementation Plans

could affect either of the parties' desire to pursue judicial review of EPA's similar analysis supporting the Affirmative Defense Removal Rule.

10. In the preamble to the Affirmative Defense Removal Rule, EPA responded to public comments on its proposed action that urged EPA to defer taking final action to remove affirmative defense provisions from Title V permitting regulations and individual permits until after the Court disposed of affirmative defense issues being litigated in the SSM SIP Call Rule Case. *See* 88 Fed. Reg. at 47,036. EPA stated confidence in its actions in the 2015 SSM SIP Call Rule. EPA also disagreed with commenters' supposed "assertions that an adverse decision with respect to the [2015 SSM SIP Call Rule] would *necessarily* undermine the legal justification for this rule, because the [SSM SIP Call Rule Case] *could* be decided on procedural or substantive grounds that would not be determinative for this action. 88 Fed. Reg. at 47,036 (emphasis added). But this Court does not hold cases in abeyance pending other agency or judicial decisions only when it is certain that the other decision will be resolved in the movant's favor and would be determinative, and in any event a pending action in one case does not have to resolve entirely the issues in another case to warrant holding the other case in abeyance. Regardless, EPA's self-serving assertions to that effect are not sufficient to outweigh the clear logic of holding

10

the instant case in abeyance until the Court disposes of very similar issues being raised in the SSM SIP Call Rule Case.

11. Holding the instant case in abeyance would not unduly prejudice any party. This case is at the very earliest stages; EPA has not even been required yet to prepare and file its certified index to the administrative record. EPA could scarcely claim that time is of the essence in this appeal, since EPA's directive to states to remove affirmative defense provisions from their Title V permitting regulations and from individual permits remains in effect, as does the removal of the affirmative defense provision from regulations on EPA-issued Title V permits; and in any event EPA took more than 30 years to decide it no longer wanted to have such affirmative defense provisions in the Title V permitting program. Most importantly, the requested abeyance would almost certainly be quite short: as explained above, the SSM SIP Call Rule Case was argued and submitted over a year and a half ago, so a decision in that case should be forthcoming soon.

Therefore, for the reasons set forth above, Petitioner SSM Litigation Group respectfully requests that the Court hold this case in abeyance and direct that the parties file motions to govern further proceedings within 30 days after

the Court issues its opinion in *Environmental Committee of the Florida Electric Power Coordinating Group, Inc. v. Environmental Protection Agency, et al.*, D.C. Cir. No. 15-1239.

Dated: October 20, 2023

                          Respectfully submitted,

                          /s/ Russell S. Frye
                          FryeLaw PLLC
                          1629 K Street, N.W.  Suite 300
                          Washington, DC  20006-1631
                          (202) 572-8267
                          Fax (866) 850-5198
                          rfrye@fryelaw.com
                          *Attorney for SSM Litigation Group*

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 27(d) and 32(g)(1) of the Federal Rules of Appellate Procedure and Circuit Rule 27(a)(2), I hereby certify that the foregoing Petitioner's Motion To Hold Case in Abeyance contains 2376 words, as counted by a word processing system that includes headings, footnotes, quotations, and citations in the count, and therefore is within the word limit set by the Court.

This document also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

Dated: October 20, 2023              /s/ Russell S. Frye

## CERTIFICATE OF SERVICE

I hereby certify that on October 20, 2023, the foregoing Petitioner's Motion To Hold Case in Abeyance was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of said filing to the attorneys of record, who are required to have registered with the Court's

CM/ECF system.

/s/ Russell S. Frye